IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PREMEDICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:06-0716 |
| | ) | Judge Nixon |
| ZOLL MEDICAL CORPORATION, | ) | Magistrate Judge Brown |
| RYAN WOOLEY, individually, | ) | |
| EN PRO MANAGEMENT, INC., | ) | |
| WALTER JOHNSON, individually, | ) | |
| and GRAEFIKA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Pending before the Court is Defendants Walter Johnson ("Johnson") and Graefika, LLC's ("Graefika") (together as "Defendants") Motion to Dismiss asserting a lack of personal jurisdiction ("Motion") (Doc. No. 27) filed with a Memorandum in Support (Doc. No. 28) and Affidavit (Doc. No. 29).[1] Plaintiff, Premedics, Inc. ("Premedics" or "Plaintiff") filed a Response (Doc. No. 32) and Affidavit (Doc. No. 35), and a Supplemental Response (Doc. No. 62). Defendants have filed their reply (Doc. No. 40) and Affidavit (Doc. No. 41).

For the reasons stated herein, Defendants' Motion to Dismiss is hereby **DENIED**.

I. FACTUAL BACKGROUND

Premedics is a Tennessee corporation that markets and distributes automated external defibrillators ("AEDs"). (Doc. No. 1 at ¶¶ 1, 8.) As part of its business, Premedics offers programs and support services to users in connection with the operation and maintenance of

---

[1] Additional Defendants in this lawsuit, ZOLL Medical Corporation, En-Pro Management, Inc. and Ryan Wooley, have not joined this pending Motion.

-1-

AEDs. The program at the center of this case is a patent-pending "three prong readiness" web-based interface system developed by Premedics called the "AED Manager." (Id. at ¶ 12.) The AED Manager checks the status of participating AEDs, and sends automated "action item" emails to customers to have their AED units tested for readiness. (Doc. No. 32 at 5.) Premedics also operates a website that lists general information about the company, including contact information and a description of its services. Of specific interest in this case, Premedics' website contains an access point to the AED Manager, which users may access only after entering in a correct login name and password. (See id. at 4.)

In July 2002, Premedics and ZOLL Medical Corporation ("ZOLL"), a Massachusetts-based company that manufactures and markets AEDs, entered into a contract whereby Premedics agreed to provide certain ZOLL customers with support services, including the AED Manager. (Doc. No. 1 at ¶¶ 9-11.) Plaintiff contends that in 2004, ZOLL took steps to reverse engineer and copy the AED Manager, ultimately creating and advertising its own web-based interactive database application. According to Plaintiff, ZOLL engaged Ryan Wooley ("Wooley") and his company, En-Pro Management ("En-Pro") to reproduce Premedics' web-based support system. Premedics asserts that Wooley and En-Pro in turn hired Defendants, Walter Johnson ("Johnson") and Graefika, the web design company Johnson wholly owns and manages, for the same purpose. (Doc. No. 1 at ¶¶ 11-19.)

The parties agree that on or about July 9, 2004, Johnson accessed Premedics' internet website, and navigated onto the AED Manager portion of the website. (Doc. Nos. 1 at ¶ 16; 28 at 9.) Plaintiff asserts that Johnson then created an unauthorized test account for the AED Manager, an account that is only distributed to Premedics' own web developers. As a result of establishing a test account, Defendants were able to receive the automated "action item" emails

Case 3:06-cv-00716 Document 63 Filed 10/09/07 Page 2 of 12 PageID #: 754

from the Premedics system, which Plaintiff claims is a proprietary competent of its system. Premedics further contends that by improperly logging into the AED Manager using an unauthorized test account, and receiving the automated emails, Defendants were able to determine the functionality of the AED Manager for the purpose of reproducing it. Plaintiff further alleges that Johnson's actions were in violation of what it refers to as a "click wrap" agreement printed on the AED Manager webpage.[2] According to Plaintiff, on September 8, 2004, Defendants' website published a statement that it had developed an interactive database application on behalf of ZOLL, called "ZOLL MD." ZOLL made a similar publication on its website in October 2004, advertising its ZOLL MD program. (See generally, Doc. Nos. 1; 32; 35.)

Plaintiff brings a number of claims against Defendants, including claims of conspiracy, misappropriation of trade secrets, violation of the Uniform Trade Secrets Act, conversion, unlawful inducement to breach a contract, tortious interference of business relationship, violation of the "click wrap" agreement, violation of the Electronic Communications Privacy Act, and violation of the Computer Fraud and Abuse Act. (Doc. No. 1 at ¶¶ 41-53.)

Defendants bring this Motion, arguing that this Court lacks personal jurisdiction over them because they have no present connection with the State of Tennessee. (Doc. No. 28; see also, FED. R. CIV. P. 12(b)(2).) Defendants contend that they have no offices, agents or contacts in Tennessee, and have never conducted or solicited business in Tennessee. Defendants further argue that their activities, as stated in Plaintiff's complaint, were all conducted in Louisiana. (Doc. No. 28 at 4-5.) The parties do not dispute that Johnson is a citizen and resident of the state

---

[2] Premedics' "click wrap" agreement prohibits viewers from reproducing, copying or disclosing to any party the software system without Premedics' prior authorization. (Doc. No. 1 at ¶ 51.)

of Louisiana, and that Graefika is a Louisiana limited liability company with its principal place of business located in Louisiana.

## II. ANALYSIS

### A. *Plaintiff's Burden of Proof*

As the Plaintiff, Premedics bears the burden of establishing that personal jurisdiction over Defendants is proper. Where, as in the case at hand, no evidentiary hearing regarding personal jurisdiction has taken place, the court views the pleadings and affidavits in the light most favorable to the plaintiff, and will not consider controverting assertions made by the movant. Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000); CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). Premedics merely needs to make a *prima facie* showing of jurisdiction in order to defeat dismissal. Calphalon Corp., 228 F.3d at 721. This burden can be met by "establishing with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (quoting Provident Nat'l Bank v. Cal. Fed. Savs. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)).

### B. *Personal Jurisdiction*

In diversity cases, a court must apply the law of the forum state to determine whether personal jurisdiction exists. Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co. Ltd., 91 F.3d 790, 793 (6th Cir. 1996). "However, constitutional concerns of due process limit the application of the state law." Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991). Because Tennessee's long-arm statute extends to the far-reaches of the Due Process Clause, the two inquiries merge, and the Court need only determine whether exercising personal jurisdiction

violates constitutional due process. Bridgeport Music, Inc. v. Still N The Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003); Payne v. Motorists' Mut. Ins. Cos., 4 F.3d 452, 455 (6th Cir. 1993). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). It is required, therefore, that defendants must have significant minimum contacts with the forum such that assertion of personal jurisdiction over them "does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (1945) (internal quotations omitted).

Personal jurisdiction can be established in two ways. General personal jurisdiction is established where a defendant's "continuous and systematic" conduct within the forum state is sufficient to justify the exercise of jurisdiction there. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445-47 (1952). In the alternative, specific personal jurisdiction is established where the plaintiff's claims "arise out of" the defendant's contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Premedics does not dispute that Defendants have no "continuous and systematic" contacts with Tennessee. Rather, the parties focus on the significance of a singular event that took place over the internet. General jurisdiction is not appropriate in this case, and the Court turns to an analysis of specific jurisdiction.

The Sixth Circuit has devised a three-part test for determining the outer limits of specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or

-5-

consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co., Inc. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).[3]

### 1. *Purposeful Availment*

The Mohasco test's first required element – determining whether a defendant purposefully availed himself of the privilege of doing business in the forum state – is the "*sine qua non* for *in personam* jurisdiction." Id. at 381-82. It ensures that the defendant's conduct and connection with the forum state are sufficient enough so that he should reasonably anticipate being haled into court there. See Burger King, 471 U.S. at 474. The "purposeful availment" requirement is established when the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." Id. at 475 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

In their Motion, Defendants place heavy emphasis on the fact that they have never conducted business in Tennessee, corresponded with persons in Tennessee, or visited Tennessee for business purposes. (Doc. No. 28 at 4-5.) They further contend that personal jurisdiction cannot exist because Johnson viewed the Premedics' website for mere minutes, unaware of Plaintiff's connection to Tennessee, while he was physically located in Louisiana at the time. (Id.) Purposeful availment, however, depends on the nature and quality of the contacts rather than the frequency or status of the activity. See CompuServe, 89 F.3d at 1265; see also, Nationwide Mut., 91 F.3d at 794 ("[S]pecific jurisdiction often may be premised on a single act of the defendant."). Defendants, moreover, cannot escape personal jurisdiction by resting on the

---

[3] The Court is bound by precedent to follow this Circuit's well-established test, and declines Defendants' invitation to apply an alternate personal jurisdiction analysis created by Tennessee state courts. (See Doc. No. 28 at 6-7 (citing Masada Inv. Corp. v. Allen, 697 S.W.2d 332, 334 (Tenn. 1985)).)

-6-

fact that Johnson did not physically enter Tennessee when venturing onto Plaintiff's website. Federal courts have consistently rejected the notion that the absence of physical presence can defeat personal jurisdiction. Burger King, 471 U.S. at 477.

Undoubtedly, the determination of purposeful availment becomes more challenging when applied to situations involving the use of the internet. The prevalence and scope of the internet allows individuals to communicate, conduct business, or casually browse across state lines and international borders without leaving their desk. Information once part and parcel to transactions, such as knowledge of another party's physical location, is no longer a prerequisite to communication. Federal courts have applied a specific analysis in determining whether a defendant's internet activity constitutes purposeful availment, commonly referred to as the "Zippo sliding scale."[4] See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D.Pa. 1997). However, the sliding scale approach is not applicable in every case merely because facts touch on internet activity. Rather, the Zippo analysis is appropriately applied in personal jurisdiction inquiries where the facts center on the defendant's activities conducted through its *own* website. See, e.g., Neogen Corp., 282 F.3d at 890 ("A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state."); see also, See, Inc. v. Imago Eyewear Party, Ltd., 167 Fed. Appx. 518, 522 (6th Cir. 2006) (applying the sliding scale analysis to determine purposeful availment where the defendant operated a website using a domain name previously trademarked by the plaintiff).

---

[4] Under the sliding scale approach, personal jurisdiction is proper on one end of the spectrum where the defendant knowingly and repeatedly conducts business with residents of a foreign jurisdiction over the internet. On the opposite end of the scale stands a defendant that has merely posted information on a "passive" website that is accessible to all internet users, including those in the forum state. The middle ground contains interactive websites where information may be exchanged between a user and the host computer. The exercise of jurisdiction in this middle range is determined by the level of interactivity and the commercial nature of the exchange of information that takes place. Zippo Mfg. Co. v. Zippo Dot. Com, Inc., 952 F. Supp. 119, 1124.

In the instant case, Defendants' activities on their own website are irrelevant for purposes of determining personal jurisdiction. Instead, the issue at hand focuses on the unauthorized actions taken by the Defendants against Plaintiff's website. In short, this is a case involving computer hacking, and therefore, personal jurisdiction turns on the tortious injury that Defendants allegedly inflicted upon Premedics. Accordingly, the Court will apply the "effects test" to determine whether the unauthorized actions taken by Defendants are sufficient to constitute purposeful availment.

The "effects test," established by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), finds personal jurisdiction "where an individual purposefully directs activities towards the forum state with the intent to cause harm there." Koch v. Local 438, 54 Fed. Appx. 807, 810 (6th Cir. 2002); see also, Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1120 (6th Cir. 1994). In Calder, an actress brought suit in California against two Floridian journalists for a libelous article they wrote and edited that was published in a national magazine headquartered in Florida. Affirming the decision that personal jurisdiction in California was proper over the journalists, the Supreme Court reasoned that, although the activities were conducted in Florida, the intentional conduct was aimed at the actress in California, and the brunt of the harm was felt there. Jurisdiction over the defendants was "therefore proper in California based on the 'effects' of their Florida conduct in California." Id. at 789.

Similarly, in Neal v. Janssen, the Sixth Circuit reasoned that when "the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment." 270 F.3d 328, 331 (6th Cir. 2001). In Neal, the defendant, who was physically located in the Netherlands, was alleged to have conducted a fraudulent business transaction with Tennessee plaintiffs via phone and facsimile. Id. at 332. Given that

-8-

the defendant's communications were purposefully directed at individuals in Tennessee, formed the heart of the lawsuit, and created foreseeable effects within the forum, the Neal court determined that the defendant had purposefully availed himself of the privilege of acting in the forum state. Id.

The principles of the "effects test" have been applied by a number of district courts deciding personal jurisdiction questions specifically dealing with allegations of computer hacking. See D.C. Micro Devel., Inc. v. Lange, 246 F. Supp. 2d 705 (W.D.Ky 2003) (finding that defendants knew or reasonably could have known that (1) the alleged computer hacking to obtain customer information concerned information maintained on a server in the forum state, (2) solicitous emails were made to forum residents, and (3) the software program planted in the plaintiff's website to redirect customers would harm the plaintiff's corporation); Facebook, Inc. v. ConnectU LLC, No. C 07-01389, 2007 WL 2326090 (N.D.Cal. Aug. 13, 2007) (holding that defendant's ignorance to plaintiff's geographic location was insufficient to avoid personal jurisdiction, and that purposeful availment was met where defendant specifically targeted actions on the internet toward the plaintiff by using falsified login information to gain access to plaintiff's website and obtain customer information for future solicitation); accord, Bus. Info. Sys. v. Prof'l Gov'tl Research & Solutions, Inc., No. Civ.A.1:02CV00017, 2002 WL 32747668 (W.D.Va. Oct. 10, 2002); Info.Techs., Int'l, Inc. v. ITI of N. Fla., Inc., No. 01 C 4668, 2001 WL 1516750 (N.D.Ill. Nov. 28, 2001).

In light of the principles laid out by the Supreme Court and the Sixth Circuit, as well as the numerous district courts faced with similar facts, this Court finds that Defendants' alleged conduct constitutes intentionally tortious activity towards Plaintiff sufficient to establish that Defendants have purposefully availed themselves to conduct business in Tennessee. There can

-9-

Case 3:06-cv-00716   Document 63   Filed 10/09/07   Page 9 of 12 PageID #: 761

be no disputing that, under Plaintiff's allegations, Defendants acted intentionally. It was not by some haphazard coincidence that Johnson navigated to Premedics' website, logged into the AED Manager using a falsified test account, and obtained informational emails indicating how AED Manager operates as a result. Moreover, Premedics' physical location and incorporation in the state of Tennessee are facts plainly stated on the home page of the Premedics website, obvious to anyone who views the website. (Doc. No. 32.) Construing the facts and pleadings in the light most favorable to Plaintiff, see Calphalon, 228 F.3d at 721, the Court concludes that Defendants knew or should have known that Plaintiff was located in Tennessee when Johnson accessed Premedics' website. Finally, Defendants' actions allegedly led directly to the creation of a competing web-based system. Thus, Plaintiff and the livelihood of its business in Tennessee most certainly bears the brunt of the harm suffered from this competition and infringement of intellectual property rights.

### 2. *"Arising out of"*

Under Mohasco, the Court must next determine whether the cause of action arises from Defendants' activities in Tennessee. 401 F.2d at 381. This requirement may be disposed of quickly. "An action will be deemed *not* to have arisen from the defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy." Creech v. Roberts, 908 F.2d 75, 80 (6th Cir. 1990) (emphasis added). Plaintiff's lawsuit is centered on allegations that another company wrongfully obtained and copied proprietary information. Defendants' alleged unauthorized access to the AED Manager, creation of a falsified test account, and receipt of action item emails remain at the heart of this case, as Plaintiff contends that these actions were the means by which Defendants reverse-engineered their product.

Accordingly, this Court finds that Plaintiff's cause of action arises from Defendants' contacts with the forum state.

### 3. *Reasonableness*

The third and final question to be answered is whether exercising personal jurisdiction over Defendants would be reasonable. Mohasco, 401 F.2d at 381. In determining reasonableness, a court must evaluate the concerns and interests of the defendant, the plaintiff, the forum state, and the judiciary system as a whole. See Burger King, 471 U.S. at 476-77. However, when the first two elements of a *prima facie* case for specific jurisdiction have been established, an inference arises that this third factor is also present. CompuServe, 89 F.3d at 1268; First Nat'l Bank v. J.W. Brewer Tire Co. 680 F.2d 1123, 1126 (6th Cir. 1982). Furthermore, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional." Burger King, 471 U.S. at 477.

Defendants provide no considerations that would render the exercise of personal jurisdiction by this Court unreasonable. The potential burdens Defendants may incur by defending a suit in Tennessee are outweighed by the interests of the judiciary system, the state of Tennessee, and Plaintiff to seek the efficient resolution to a dispute involving a Tennessee corporation and Tennessee law. The Court, therefore, finds that the exercise of personal jurisdiction over Defendants in Tennessee would be reasonable.

## III. CONCLUSION

For the reasons set forth above demonstrating the availability of personal jurisdiction, the Court holds that Defendants Walter Johnson and Graefika LLC are subject to personal jurisdiction in Tennessee in this action. Accordingly, the Court hereby **DENIES** Defendants' Motion to Dismiss.

It is so ORDERED.

Entered this the 9th day of October, 2007.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT